IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KEITH J. RIDDELL,                          3:11-CV-381-BR

          Plaintiff,

                                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


DAVID B. LOWRY
16200 S.W. Pacific Hwy, Suite H-233
Portland, OR 97224
(503) 245-6309


          Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1   -   OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
MATTHEW W. PILE
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3760

      Attorneys for Defendant


BROWN, Judge.

    Plaintiff Keith J. Riddell seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's application

for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI) under Titles II and XVI of the Social Security Act

respectively.  This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **AFFIRMS** the

decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    On March 20, 2007, Plaintiff filed an application for SSI

and DIB alleging a disability onset date of August 31, 2002.

Tr. 173-79.[1]  His applications were denied initially and on

_____

    [1]Citations to the official transcript of record filed by the
Commissioner on March 18, 2011, are referred to as "Tr."

reconsideration.  Tr. 120-32.  An Administrative Law Judge (ALJ) held a hearing on November 5, 2009.  Tr. 47-118.  Plaintiff was represented by an attorney at the hearing.  Tr. 46.  Plaintiff, lay witness Dennis James, and a Vocational Expert (VE) testified. Tr. 47-118.

An ALJ issued an opinion on February 26, 2010, and found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 26-39.  That decision became the final decision of the Commissioner on March 4, 2011, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On March 28, 2011, Plaintiff filed his Complaint seeking review by this Court of the Commissioner's decision.

## BACKGROUND

Plaintiff was fifty years old at the time of the most recent hearing.  Tr. 32.  Plaintiff did not finish high school or obtain a high-school equivalency degree.  Tr. 51.  He has performed past work as a carpenter and a scrap-metal salvage worker.  Tr. 109-10.

Plaintiff has been diagnosed with chronic neck and low-back pain, degenerative disc disease and spondylosis of the cervical spine, central and foraminal stenosis at C5-C7, bulging discs in his lumbar spine at L5-S1, hypertension, hyperlipidemia, atherosclerotic cardiovascular disease, carpal tunnel syndrome,

fatigue, and degenerative joint disease of the left knee.
Tr. 384, 394, 449, 497-500, 538, 541, 642, 702-03.

Plaintiff has also struggled with a long history of
substance abuse, including methamphetamines, narcotic pain
medications, and alcohol.  Tr. 578-603.  Plaintiff been diagnosed
with narcotic and alcohol addiction.  *See, e.g.,* Tr. 497-500,
506-15.

Plaintiff alleges he is disabled due to pain in his knees,
back, neck, head, arms, and hands.  Tr. 64, 214, 239.  Plaintiff
alleges his impairments limit his ability to walk, to sit, to
stand, to lift, to bend, to squat, to reach, to kneel, to climb
stairs, to use his hands, to concentrate, to remember, to
understand, to follow instructions, and to get along with others.
Tr. 239-47.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After reviewing the medical
records, the Court adopts the ALJ's summary of the medical
evidence.  *See* Tr. 29-38.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

5   -   OPINION AND ORDER

2005).   The court may not substitute its judgment for that of the

Commissioner.   *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the

meaning of the Act.   *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).   *See also* 20 C.F.R. §§ 404.1520, 416.920.   Each step is

potentially dispositive.

In Step One, the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial

gainful activity.   *Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1052 (9th Cir. 2006).   *See also* 20 C.F.R.

§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any medically

severe impairment or combination of impairments.   *Stout*, 454 F.3d

at 1052.   *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),

416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

If the claimant is found to be disabled and there is medical evidence of substance abuse, the ALJ must engage in the sequential five-step inquiry a second time without taking the claimant's substance abuse into account for the purpose of determining whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). It is a "material factor" when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). A claimant is not considered

disabled and is ineligible for benefits if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). *See also Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). In such determinations, the claimant bears the burden to prove that drug addiction or alcoholism is not a contributing factor material to his disability. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff did not engage in substantial gainful activity since August 31, 2002. Tr. 29.

At Step Two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease or a tear of the left knee, and alcoholism and drug abuse. Tr. 29.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 30-31. Based on all of Plaintiff's impairments including his substance abuse disorders, the ALJ found Plaintiff can perform less than the full range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) and should

> not climb ropes, ladders, or scaffolds and
> should only occasionally kneel, crouch, and

9  -  OPINION AND ORDER

> crawl; and he should avoid concentrated
> exposure to hazards such as heights.  Due to
> alcohol and drug dependence, he is unable to
> maintain concentration and persistence to
> work full time and sustain competitive
> employment.

Tr. 31.

At Step Four, the ALJ concluded Plaintiff is unable to perform any of his past relevant work.  Tr. 21.

At Step Five, the ALJ concluded Plaintiff does not have a sufficient RFC, in light of his substance abuse disorders, to perform jobs that exist in significant numbers in the national economy.  Tr. 32-33.

In accordance with 20 C.F.R. §§ 404.1535(a), 416.935(a), the ALJ then performed the sequential analysis a second time. Considering only the impairments and limitations that would remain if Plaintiff stopped using drugs and alcohol, the ALJ found Plaintiff's condition did not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 33-34. The ALJ also assessed Plaintiff with the RFC to perform less than the full range of the exertional demands of light work and should "not climb ropes, ladders, or scaffolds and should only occasionally kneel, crouch, and crawl; and he should avoid concentrated exposure to hazards such as heights."  Tr. 34.

At Step Four, the ALJ found these restrictions would preclude Plaintiff from returning to his past work even if he stopped using drugs and alcohol.  Tr. 38.

10  -  OPINION AND ORDER

At Step Five, the ALJ found Plaintiff would retain the RFC
to make an adjustment to work in jobs that exist in the national
economy if he quit using drugs and alcohol.  Tr. 38-39.  The ALJ
identified two examples of such work drawn from the testimony of
the VE:  janitor and cashier.  Tr. 39.  Thus, the ALJ concluded
Plaintiff is ineligible for benefits because drug addiction and
alcoholism are contributing factors material to the determination
of disability.  Tr. 39.

## DISCUSSION

Plaintiff contends the ALJ erred by:  (1) failing to find
Plaintiff's carpal tunnel syndrome to be a severe impairment at
Step Two; (2) failing to provide legally sufficient reasons for
discrediting Plaintiff's subjective-symptom testimony;
(3) improperly discrediting the lay-witness testimony and
statements by Eileen Marie Riddell, Dennis James, and Jack
Rothwell; (4) concluding Plaintiff's drug and alcohol abuse are
material to the disability determination; (5) failing to provide
a legally sufficient assessment of Plaintiff's RFC, and
(6) failing to include all of Plaintiff's functional limitations
in formulating the hypothetical posed to the VE.

## I.    Plaintiff's Carpal Tunnel Syndrome.

Plaintiff contends the ALJ erred when she concluded
Plaintiff's carpal tunnel syndrome is not a severe impairment at

Step Two of the sequential analysis.  *See* Tr. 29.

At Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.920(a)(4)(ii).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.921(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.921(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .  [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28 at *2 (Nov. 30, 1984)(internal quotations omitted).

12  -  OPINION AND ORDER

The Ninth Circuit describes Step Two as a "*de minimus* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005). "Great care should be exercised in applying the not severe impairment concept." SSR 85-28 at *4.

Although the record contains evidence of Plaintiff's diagnosis of carpal tunnel syndrome and also contains diagnostic tests showing some abnormal nerve conduction in Plaintiff's right arm, the record is replete with physician examinations of Plaintiff's upper extremities that reveal Plaintiff is not functionally limited by his impairment. *See, e.g.,* Tr. 343 (equal bilateral hand grip), 368 (full bilateral hand grip), 365 (no wasting of muscles in upper extremities with equal reflexes), 372 (same), 383 (normal neurovascular examination of upper extremities with full range of motion and negative for signs of impingement), 461 (full strength in upper extremities with equal and symetric reflexes), 532 (normal strength and reflexes), 533 (full upper extremity strength), 535 (no upper extremity atrophy or motor deficits), 539 (normal upper extremity strength and reflexes).

Accordingly, the Court concludes the ALJ's determination that Plaintiff's carpal tunnel syndrome is not a severe impairment is supported by substantial evidence in the record.

## II.  Plaintiff's Credibility.

Plaintiff also contends the ALJ erred by failing to give clear and convincing reasons for discrediting Plaintiff's credibility.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can "reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Williamson v. Comm'r of Soc. Sec.*, No. 10-35730, 2011 WL 2421147 (9th Cir. June 17, 2011)(quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d

821, 834 (9th Cir. 1995)).  The ALJ's credibility finding "must
contain specific reasons for the finding on credibility,
supported by the evidence in the case record, and must be
sufficiently specific to make clear to the individual and to any
subsequent reviewers the weight the adjudicator gave to the
individual's statements and the reasons for that weight."  SSR
96-7p, at *2.

     The ALJ may rely on many factors when considering a
claimant's credibility including:  "(1) ordinary techniques of
credibility evaluation, such as the claimant's reputation for
lying, prior inconsistent statements concerning the symptoms, and
other testimony by the claimant that appears less than candid;
(2) unexplained or inadequately explained failure to seek
treatment or to follow a prescribed course of treatment; and (3)
the claimant's daily activities."  *Tommasetti v. Astrue*, 533 F.3d
1035, 1039 (9th Cir. 2008).  *See also* 20 C.F.R. § 404.1529(c).
Although the ALJ may not solely rely on a lack of objective
findings to reject a claimant's subjective-symptom testimony,
"[o]bjective medical evidence . . . is a useful indicator to
assist us in making reasonable conclusions about the intensity
and persistence of your symptoms and the effect those symptoms,
such as pain, may have on your ability to work.  We must always
attempt to obtain objective medical evidence and, when it is
obtained, we will consider it in reaching a conclusion as to

15  -  OPINION AND ORDER

whether you are disabled." 20 C.F.R. § 404.1529(c).

### A.   Plaintiff's Testimony.

In his Pain Questionnaire, Plaintiff stated he suffers from an extreme level of pain over his "entire body" that is "constant," is caused by "all activities," and is made worse by "any activity." Tr. 246. Plaintiff attested his pain is most severe in his neck, back, and knees and that he also suffers from pain and numbness in his hands. Tr. 64, 93-94. Plaintiff testified his pain limits his ability to stand and to sit for no more than one hour at a time. Tr. 67-68, 97.

Plaintiff attested he could perform limited household chores such as vacuuming, washing dishes, and retrieving firewood, but that after about fifteen minutes of work, he requires two to three hours of rest. Tr. 85-92, 97. Plaintiff also testified he has been slowly building a cabin in his spare time, cared for his mother when she was sick, and performed yard maintenance for his mother and aunt. Tr. 85-92.

### B.   ALJ's Decision.

The ALJ found Plaintiff's testimony credible with respect to Plaintiff's narcotic and alcohol dependence and as to Plaintiff's back and knee pain. Tr. 31. The ALJ, however, found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not credible. Tr. 35. Specifically, the ALJ found the following undermined Plaintiff's

16  -  OPINION AND ORDER

credibility as to the extent of his disability:   (1) Plaintiff's
activities of daily living belied his claims of constant pain and
extreme limitations, (2) Plaintiff made inconsistent statements,
(3) the treatment of Plaintiff's impairments has been
conservative, (4) Plaintiff was noncompliant with medical
treatment, and (5) Plaintiff's work history had employment gaps.
Tr. 35-36.

**C.   Analysis.**

Because the ALJ did not point to evidence of malingering,
she must give clear and convincing reasons to support her
determination that Plaintiff is less-than-credible with respect
to the extent and limiting effects of his subjective symptoms.

The ALJ concluded Plaintiff's activities of daily living
undermined Plaintiff's allegations of constant and disabling pain
that is aggravated by "any activity."   The record contains
numerous references to Plaintiff's activities of daily living
that contradict the description Plaintiff gave at the hearing
before the ALJ.   *See, e.g.,* Tr. 62 (performing oil changes) 85
(performing yard work for mother and aunt), 86 (walking a mile to
a mile-and-a-half every day), 86-87 (building a cabin slowly,
maintaining his and his mother's residence), 367 (clearing out
vegetation in yard), 567 (climbing trees to pick fruit), 553 ("I
bend and lift all the time"), 561 (repetitive heavy lifting
causes pain), 573 (heavy lifting causes onset of pain, stacking

firewood recently), 694 (performing odd jobs a few days a month).

The ALJ also concluded Plaintiff made inconsistent statements concerning his drug and alcohol use.  Tr. 36.  For example, Plaintiff maintained three times at the hearing that he did not drink any alcohol during the year between May 2008 and May 2009 until he "fell off the wagon" for two days in May 2009 when he was admitted to the hospital to be treated for narcotic overdose (combination of methamphetamines, pain medication, alcohol).  Tr. 73, 79-81.  The record, however, reflects Plaintiff's physicians at the Virginia Garcia Memorial Center reported on several occasions between May 2008 and May 2009 that Plaintiff had been drinking or smelled of alcohol.  *See, e.g.,* Tr. 581 ("still occasional ETOH" in February 2009 and "does not see a reason for complete ETOH abstinence"), 584 ("last ETOH [approximately] 12/16/08"), 588 ("smells of ETOH" on October 15, 2008).  In addition, Plaintiff stated at the hearing before the ALJ that he never took pain medication early and always took medication as prescribed.  Tr. 76, 84.  The record is replete with physicians' statements to the contrary.  *See, e.g.,* 553 (Plaintiff "admits he has taken more pain meds than he is supposed to."), 413-17 (multiple breaches of pain contracts), 714 ("I think there is a very likely chance that [Plaintiff] is drug seeking.  He has very little objective data to support his pain.").

18  -  OPINION AND ORDER

The ALJ also noted that despite Plaintiff's allegedly severe
pain, the treatment of Plaintiff's symptoms was essentially
conservative.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir.
2007)(conservative treatment sufficient to discount claimant
testimony concerning severity of impairment).  Plaintiff contends
the ALJ erred by concluding that Plaintiff's physicians did not
recommend surgery and points to the notes of a discussion between
Plaintiff and his treating physician, Lee Gardner, M.D., in which
Dr. Gardner indicated Plaintiff was not willing to consider a
surgical treatment.  Tr. 383.  The record, however, does not
reflect Dr. Gardner actually recommended surgery.  Furthermore,
the weight of the record supports the ALJ's conclusion that
Plaintiff's symptoms were treated conservatively with pain
medication.  In fact, Plaintiff consulted with Fred C. Williams,
Jr., M.D., a neurosurgeon, who concluded after examining
Plaintiff on multiple occasions that Plaintiff "has no radiating
neck pain.  He is neurologically intact.  There is no instability
in the cervical spine to explain his neck pain.  At this time he
is not a surgical candidate."  Tr. 535.  Dr. Williams concluded
on a separate occasion that Plaintiff "has no radiating arm or
leg pain, although he does have paraspinal pain along entire
length of spine.  There is no etiology found on imaging for this
pain.  He is neurologically intact."  Tr. 537.

The ALJ also properly relied on Plaintiff's noncompliance

with medical treatment to discredit his subjective symptom testimony. *See Tommasetti*, 533 F.3d at 1039. The Court has already noted Plaintiff's repeated non-compliance with pain contracts, and the record is replete with physicians' references to Plaintiff's non-compliance with their treatment recommendations, including by giving his pain medications to his friends. *See, e.g.,* Tr. 397, 413-17, 512.

The Court concludes these reasons given by the ALJ are clear and convincing bases supported by substantial evidence in the record for discrediting Plaintiff's subjective symptom testimony. The Court, therefore, need not address the remaining reasons provided by the ALJ.

**III. Lay Witnesses Eileen Marie Riddell, Dennis James, and Jack Rothwell.**

Plaintiff also contends the ALJ improperly rejected lay-witness statements and testimony by Eileen Marie Riddell, Dennis James, and Jack Rothwell.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

20  -  OPINION AND ORDER

A.   **Eileen Marie Riddell.**

Eileen Riddell, Plaintiff's mother, submitted two witness statements:  a Third Party Adult Function Report on March 27, 2007; and a Witness Statement on October 21, 2009.  Tr. 221-28, 295-302.

The ALJ noted and summarized both reports in her decision and stated that she considered the statements by Eileen Riddell in reaching her decision.  Tr. 37.  The ALJ, however, found Eileen Riddell's statements to contain some inconsistencies because she described Plaintiff as being in constant pain yet noted he was able to perform extensive activities, such as maintaining farm equipment, acquiring wood for winter heat, helping around the family farm, cooking, and taking care of Plaintiff's home.  Tr. 37, 221-28, 295-302.  This reason is germane to Eileen Riddell's statements and is consistent with the ALJ's conclusion based on the whole record that despite Plaintiff's pain, he is more capable than he attests.

The ALJ also discounted some of Eileen Riddell's conclusions on her October 21, 2009, Witness Statement because "it is not clear that she has the expertise to offer an objective or functional assessment of claimant's abilities."  Tr. 37.  This reason is also germane to Eileen Riddell's statements because the Witness Statement sought her opinion as to psychological assessments of Plaintiff and as to physical evidence of

equivalence with Listed Impairments that appear to require expertise beyond a lay person's opinion.  Tr. 297-301.

Accordingly, the Court concludes the ALJ properly considered and appropriately discounted the lay-witness statements by Eileen Riddell.

**B.    Dennis James.**

James testified on Plaintiff's behalf at the hearing before the ALJ.  James attested he sees Plaintiff once or twice a week and has routinely helped Plaintiff obtain firewood.  Tr. 101-02. James attested Plaintiff has difficulty walking for distances in excess of two blocks, has difficulty gripping objects, suffers from pain and fatigue, performs tasks at a slow pace, and has problems controlling his anger.  Tr. 99-107.

The ALJ noted and summarized James's testimony and stated she considered his statements.  Tr. 37.  The ALJ concluded the record reflected Plaintiff had been more active than described by James throughout the alleged period of disability despite Plaintiff's allegations of pain.  The Court concludes this reason is germane to James's testimony and is supported by substantial evidence in the record.

Accordingly, the Court concludes the ALJ properly considered and appropriately discounted James's lay-witness testimony.

**C.    Jack Rothwell.**

On November 5, 2009, Rothwell completed the same Witness

22  -  OPINION AND ORDER

Statement form submitted by Eileen Riddell in which he rated
Plaintiff's functionality as "moderate," concluded Plaintiff did
not have any limitations on his activities of daily living
(capable of caring for Plaintiff's sick mother, cleaning house,
doing laundry for himself and his mother, preparing food for
Plaintiff's mother, etc.), and had moderate limitations on social
functioning.  Tr. 304-11.  In addition, Rothwell gave his opinion
as to Plaintiff's episodes of decompensation and several Listed
Impairments.  307-11.

The ALJ noted and summarized Rothwell's Witness Statement
and stated she considered his statements when making her
decision.  Tr. 38.  As with Eileen Riddell, the ALJ concluded
Rothwell did not have the expertise to reach psychological or
medical conclusions about Plaintiff's abilities.  Tr. 38.  That
reason is germane to Rothwell's statement.  Ultimately the ALJ
concluded the weight of the evidence supported a finding that
Plaintiff would remain capable of performing light work if he
quit abusing drugs and alcohol despite Rothwell's description of
Plaintiff's limitations.

Accordingly, the Court concludes the ALJ properly considered
and discounted Rothwell's lay-witness statement.

**IV. Materiality of Plaintiff's Drug and Alcohol Abuse.**

As noted, the ALJ found, when considering Plaintiff's drug
and alcohol impairments in combination with his other severe

impairments, Plaintiff is disabled, but that if Plaintiff were to end his drug and alcohol abuse, Plaintiff would not be disabled. Tr. 38-39.  Thus, the ALJ concluded Plaintiff's drug and alchohol addictions are "contributing factor[s] material to the determination of disability."  See 20 C.F.R. §§ 404.1535(a), 416.935(a).  Plaintiff contends the ALJ erred in reaching the conclusion that Plaintiff's drug and alcohol addictions are material to his disability.  Specifically, Plaintiff contends the ALJ's conclusion that Plaintiff is incapable of maintaining competitive employment because of his drug and alcohol addiction is not supported by the record.

As noted, a claimant is not disabled and is ineligible for benefits if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  Plaintiff bears the burden to prove his drug and alcohol abuse are not a material factor in his disability.  Parra, 481 F.3d at 749-50.

The ALJ relied on the opinions of Jennifer Lin, M.D., and Dennis M. Liu, M.D., in reaching her conclusion that Plaintiff's substance abuse was a material factor contributing to his disability.  Tr. 32.

**A.    Dr. Lin.**

On September 29, 2008, Dr. Lin, Plaintiff's treating physician in 2007 and 2008, completed a form on behalf of

Plaintiff at the request of Plaintiff's counsel.   Tr. 540-46.
Dr. Lin diagnosed Plaintiff with alcohol use, back pain secondary
to degenerative disc disease, carpal tunnel syndrome, tobacco use
with chronic obstructive pulmonary disorder, and coronary artery
disease.   Tr. 541.   Dr. Lin noted Plaintiff struggles with
"aggressive/rude behavior" and "unaddressed ETOH use/abuse."
Tr. 542.   Dr. Lin opined Plaintiff's symptoms are severe enough
to interfere with his attention and concentration.   Tr. 542.
Dr. Lin listed Plaintiff's symptoms as back pain, neck pain, and
finger and arm numbness and described Plaintiff's prognosis as
"fair/poor."   Tr. 541.

With respect to each question concerning Plaintiff's ability
to sustain full-time work or to perform work-related functions,
Dr. Lin either answered "don't know," noted limitations set out
were "per patient's request," or referenced Plaintiff's "ETOH
abuse."   Tr. 541-46.   In response to inquiries on the form
seeking medical findings to support her opinion, Dr. Lin
routinely deferred to Plaintiff's neurosurgical evaluation by
Dr. Williams.   Tr. 541-45.   Ultimately Dr. Lin concluded that
Plaintiff's drug and alcohol abuse is the "dominant cause of
[the] inability to adequately treat [Plaintiff's] back [and] neck
pain."   Tr. 546.

As noted, Dr. Lin repeatedly referenced Dr. Williams's
findings in her response to the questionnaire from Plaintiff's

counsel.  Tr. 541-45.  Dr. Williams, a neurosurgeon, examined
Plaintiff on multiple occasions in early 2008 on referral from
Dr. Lin.  Tr. 532-39.  Dr. Williams noted Plaintiff is
neurologically intact and has normal upper extremity strength,
reflexes, and sensation with exception of some "diffusely
diminished" sensation in his hands that was "non-anatomic."
Tr. 532, 535-39.  Dr. Williams also observed Plaintiff does not
have muscle atrophy or motor deficits.  Tr. 535.  Dr. Williams
did not find any evidence of radiculopathy and concluded the
etiology of Plaintiff's pain was unclear.  Tr. 532-37.
Dr. Williams did not otherwise describe any functional
limitations resulting from Plaintiff's impairments.

### B.    Dennis M. Liu, M.D.

Dr. Liu, a rheumatologist, examined Plaintiff on October 19,
2006, and again on November 1, 2006.  Tr. 460-64.  On his
examination of Plaintiff, Dr. Liu noted Plaintiff had a good
range of motion in his cervical, thoracic, and lumbar spine
without any tenderness.  Tr. 461.  Dr. Liu also observed
Plaintiff had full strength bilaterally in his upper extremities
with equal and symmetric reflexes.  Tr. 461.  Dr. Liu noted
Plaintiff's complaints of fatigue and chronic pain "all over his
body" and noted specific tenderness in Plaintiff's left knee.
Tr. 460-61, 463.

On his first examination, Dr. Liu expressed concern that

Plaintiff may have rheumatoid arthritis or some other autoimmune condition that might cause Plaintiff's generalized pain. Tr. 461-62.  Dr. Liu, however, stated:

> Complicating his presentation is the fact that he has been on chronic narcotic therapy which has produced tolerance to these medicines and that he requires high amounts of medicine to allow himself to move; this may be a sign of physical dependence on the medication which makes it harder to determine if his symptoms of pain are due to a true condition that is secondary to an anatomic derangement versus his reliance on such medications.

Tr. 461.  On his second examination of Plaintiff, after his review of additional diagnostic tests, Dr. Liu ultimately concluded:

> I believe [Plaintiff's] current presentation is consistent with narcotic dependence with the possibility of an overlying fibromyalgia syndrome.  However, the latter diagnosis is hard to determine considering the fact that he continues to take morphine on a regular basis. . . .  I do not believe that he has any signs or symptoms of rheumatoid arthritis or other inflammatory arthropathy that would be the source of his current pain symptoms. I recommended to him to pursue an evaluation and treatment plan by a pain management group in order to get him off the narcotics and possibly have treatment for fibromyalgia.

Tr. 463.

### C.  Analysis.

In light of the foregoing assessments by Drs. Lin, Williams, and Liu, the record contains substantial evidence from Plaintiff's physicians to support a finding that, absent

27  -  OPINION AND ORDER

Plaintiff's drug and alcohol dependence, he is capable of light work as the ALJ concluded.  In addition, the record supports the conclusion that, when Plaintiff's drug and alcohol dependence are considered, Plaintiff is incapable of maintaining competitive employment.  When the record is considered as a whole, it reflects Plaintiff routinely attended medical appointments intoxicated, left appointments before they were completed, physically threatened some physicians, and was verbally aggressive with his physicians.  *See, e.g.,* Tr. 340-60, 378, 542 571, 589, 661.  These findings support a determination that Plaintiff's drug and alcohol abuse render him incapable of maintaining competitive employment.

On this record, the Court cannot conclude the ALJ erred in reaching the determination that Plaintiff's drug and alcohol dependence is a material factor contributing to his disability nor that Plaintiff carried his burden to prove that his addiction issues are not, in fact, material to his disability.  *See Parra,* 481 F.3d at 749-50.

**V.    Plaintiff's RFC.**

Plaintiff maintains the ALJ erred when she failed to follow Social Security Ruling 96-8p when formulating Plaintiff's RFC. Specifically, Plaintiff contends the ALJ failed to assess Plaintiff's RFC on a function-by-function basis.

The ALJ found Plaintiff could perform a modified range of

light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b),

which provide:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it
> requires a good deal of walking or standing,
> or when it involves sitting most of the time
> with some pushing and pulling of arm or leg
> controls.  To be considered capable of
> performing a full or wide range of light
> work, you must have the ability to do
> substantially all of these activities.  If
> someone can do light work, we determine that
> he or she can also do sedentary work, unless
> there are additional limiting factors such as
> loss of fine dexterity or inability to sit
> for long periods of time.

The ALJ then set out the additional limitations on Plaintiff's

functional capacity in narrative form as required by Social

Security Ruling 96-8p.  Tr. 31.  The ALJ's RFC is, therefore,

sufficient to permit the Court to review the limitations on

Plaintiff's functional capacity that the ALJ found were supported

by the record.

     In his Reply, Plaintiff indicates the specific limitations

that the ALJ improperly omitted from her assessment of

Plaintiff's RFC resulted from Plaintiff's carpal tunnel syndrome.

The Court, however, has already assessed the record with respect

to Plaintiff's upper extremities and has concluded there is

substantial evidence in the record to conclude, despite

Plaintiff's diagnosis and some abnormal findings on a nerve

conduction test, that Plaintiff's carpal tunnel syndrome does not significantly limit Plaintiff's ability to perform work-related functions.

Based on the foregoing analysis of the record in this matter, the Court concludes the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record.

**VI.   Hypothetical to the VE.**

Finally, based on Plaintiff's foregoing assertions of error by the ALJ, Plaintiff contends the ALJ's hypothetical to the VE at the hearing was not supported by the evidence.  Having found the ALJ's decision was legally sufficient and based on substantial evidence in the record with respect to each of Plaintiff's asserted grounds for error, the Court does not find any error in the ALJ's hypothetical to the VE.

<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 5th day of April, 2012.

_____
ANNA J. BROWN
United States District Judge